## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION
## No. 5:13-CV-334-D

| | |
|---|---|
| WILLIAM HOWARD SCHALLER, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| v. | ) MEMORANDUM AND |
| | ) RECOMMENDATION |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-24, DE-30] pursuant to Fed. R. Civ. P. 12(c). Claimant William Howard Schaller ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on December 1, 2009, alleging disability beginning September 18, 2002. (R. 282). His claim was denied initially and upon reconsideration. (R. 72, 82). A hearing before Administrative Law Judge Allan T. O'Sullivan ("ALJ") was held on May 11, 2011, at which Claimant was represented by counsel and a witness and a vocational expert ("VE") appeared and testified. (R. 49-65). On May 24, 2011, the

ALJ issued a decision denying Claimant's request for benefits. (R. 83-97). On July 29, 2011, the Appeals Council remanded the claim to the ALJ for further administrative proceedings. (R. 98-100). A second administrative hearing before ALJ O'Sullivan was held on January 12, 2012, at which Claimant was once again represented by counsel and a vocational expert ("VE") appeared and testified. (R. 29-48). On February 9, 2012, the ALJ issued a decision denying Claimant's claims. (R. 9-28). On March 4, 2013, the Appeals Council denied Claimant's request for review of ALJ O'Sullivan's second administrative decision. (R. 1-6). Claimant then commenced the instant action, seeking judicial review of the now final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in

2

conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) failure to give proper

3

weight to a treating physician's medical opinion and failure to seek a Medical Source Statement ("MSS") from that physician, Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 7-10; (2) improper use of boilerplate language in explaining his decision, *id.* at 10-18; (3) improper assessment of Claimant's residual functional capacity ("RFC") for failing to find sufficient non-exertional limitations, *id.* at 18-19; and (4) improper assessment of Claimant's credibility, *id.* at 19-20.

## IV. FACTUAL HISTORY

### A.    ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 15). Next, the ALJ determined Claimant had the following severe impairments: sleep apnea, circadian rhythm disorder, morbid obesity, degenerative disc disease, depression, and history of alcohol abuse. (R. 15-16). The ALJ found that Claimant did not suffer from any non-severe impairments. *Id.* At step three, however, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16-17). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in his activities of daily living, mild difficulties in social functioning, moderate difficulties in concentration, persistence and pace, and no episodes of decompensation of extended duration. (R. 17).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the

4

ability to perform light work[1] with the additional requirements that Claimant engage in "no climbing of ladders, ropes, and scaffolds, and avoidance of hazards, such as heights and machinery." (R. 17). The ALJ also identified the non-exertional limitation of restricting Claimant to simple, routine, and repetitive tasks. *Id.* In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 17-20).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a traffic consultant or a planner. (R. 21). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 21-22).

## B.   Claimant's Testimony at the Administrative Hearing

At the time of Claimant's second administrative hearing, Claimant was 56 years old and unemployed. (R. 31-32). Claimant graduated from college in 1977 has a Master's Degree in Public Administration. (R. 33, 287). Claimant was last employed with the North Carolina Department of Transportation, where for approximately eight (8) years he served as a senior policy analyst. (R. 32). Claimant's past work experience also includes work as a solar technology salesman and transportation planner. (R. 32-33).

Claimant explained numerous medical conditions supporting his disability claim and his

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

5

inability to work full-time. These medical conditions include sleep apnea, circadian rhythm disorder, depression, and obesity. Claimant testified that the primary reason he is unable to work is the effects of sleep apnea and circadian rhythm disorder. Claimant was diagnosed with severe obstructive apnea after testing in a sleep lab and was prescribed a continuous positive airway pressure ("CPAP") machine. (R. 33). Claimant testified that as a result of the machine, his sleep quality has improved over his pre-diagnosis state. (R. 33-34). Despite the improvements brought about by the CPAP machine, Claimant continues to suffer from the effects of circadian rhythm disorder, which varies his sleep patterns such that maintaining a regular sleep schedule is very difficult. (R. 34). Claimant used his vacation leave and sick days in order to attempt to compensate for missed work due to lack of sleep. (R. 35). Claimant stated that his pay was reduced by half because of time missed from work and that he felt that making the drive to work on little sleep was dangerous. *Id.* Even where Claimant felt rested enough to drive safely, he believed that his productivity was negatively affected. (R. 39). The effect of the circadian rhythm disorder is that Claimant's sleep schedule can be completely opposite of normal sleep hours and he is unable to maintain a sleep schedule consistently enough to work normal hours. (R. 37). During the week before the administrative hearing, for example, Claimant regularly slept until three or four o'clock in the afternoon. *Id.* Claimant also noted that his schedule can be normal or somewhere in between a completely opposite and normal schedule. *Id.* The schedules can change every few days or can last up to a couple of weeks or a month. (R. 38, 42).

Claimant also noted problems with depression. He stated that he does not know whether his sleep issues caused his depression or not but that he has experienced these problems alongside his sleep symptoms. (R. 36). Claimant took medication for depression but stopped using it in 2009 with

6

the permission of his doctor and, despite continued symptoms, has found the situation tolerable. (R. 36, 42). Claimant testified that the combination of his sleep disorder and depression affects his ability to accurately perceive his surroundings and his judgment. *Id.* Claimant has a history of alcohol abuse dating back to his college years, but testified that he has stopped drinking entirely. (R. 39-40). Since stopping alcohol use, Claimant's sleep cycles have not changed. (R. 40).

Claimant also noted problems with obesity. Claimant has weighed as much as 500 pounds in the past, but at the time of the hearing weighed only 350 pounds. *Id.* Claimant attributes some of his weight gain to alcohol overuse. *Id.* Claimant recently began experiencing pain in his lower back and has sought the help of a chiropractor. (R. 41). Claimant lives by himself in a rural area. *Id.* Claimant's friends help him with household chores and yard work that he is unable to do himself. (R. 41-42). Claimant occupies himself by performing some ministry work, internet research, and watching bible study and preaching on television. (R. 41). Claimant does not engage in social activity such as eating out because he cannot afford to do so. *Id.*

## C. Vocational Expert's Testimony at the Administrative Hearing

Ann Neulicht testified as a VE at the administrative hearing. (R. 43-46). After the VE's testimony regarding Claimant's past work experience (R. 44), the ALJ asked the VE to assume a hypothetical individual of the same age, education, and prior work experience as Claimant and posed a hypothetical question. The ALJ asked whether there were jobs in the local and national economies that the individual could perform, assuming that the individual has the physical capacity to perform light work involving simple, routine and repetitive tasks and the restriction that the individual avoid hazards such as heights and heavy machinery. (R. 44-45). The VE responded that work was available to the individual but that Claimant's past relevant work would be precluded because it was

7

performed at the skilled level. (R. 45). The VE then identified three jobs available in significant numbers in the local and national economies which the hypothetical individual would be able to perform: office helper (DOT # 239.567-010), mail clerk (DOT # 209.687-026), and office cleaner (DOT # 323.687-014). *Id.* Claimant's counsel expanded on the hypothetical by adding the restrictions that the individual is limited to sedentary work and is unable to engage in a regular work schedule because of inconsistent sleep patterns. (R. 45-46). The VE responded that under the new restrictions, the individual would be unable to find any job accommodating his needs. (R. 46).

# V. DISCUSSION

## A. The ALJ's Treatment of Dr. Perkins' Medical Opinion Evidence.

Claimant contends first that the ALJ assigned improper weight to the opinion of his treating physician, Dr. A. Thomas Perkins, and failed to seek an MSS from him. Pl.'s Mem. at 7-10. The undersigned disagrees with Claimant and finds that proper weight was assigned to the opinion and that the failure to seek an MSS in this case was not erroneous.

### i. *The ALJ's Evaluation of Dr. Perkins' Medical Opinion.*

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. *Id.* § 404.1527(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is

8

inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist.[2] *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006), he must nevertheless explain the weight accorded such opinions. SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). Moreover, when considering the findings of state agency consultants, the ALJ must

> evaluate the findings using relevant factors . . . , such as the [consultant's] medical specialty and expertise in [the Social Security Administration's] rules, the supporting evidence in the case record, supporting explanations provided by the [consultant], and any other factors relevant to the weighing of the opinions.

20 C.F.R. § 404.1527(f)(2)(ii). The ALJ must explain the weight given to these opinions in his decision. *Id.*; SSR 96-6p, 1996 WL 374180, at *1.

---

[2] The Social Security regulations provide that all medical opinions, including opinions of examining and non-examining sources, will be evaluated considering these same factors. 20 C.F.R. § 404.1527(e).

Here, Claimant contends that the ALJ failed to consider and assign "greatest" weight to Dr. Perkins' opinion that Claimant's circadian rhythm disorder "should be sufficient to support a claim for disability." Pl.'s Mem. at 7-8; (R. 733). Dr. Perkins' statement on which Claimant relies is but one contained in an April 8, 2011 letter. (R. 753). Contrary to Claimant's assertion, the ALJ considered Dr. Perkins' opinion in multiple places. First, in dismissing Claimant's testimony that attempts to keep a normal schedule were not helpful, the ALJ noted Dr. Perkins' statements from the April 8, 2011 opinion letter that Claimant had not kept a return appointment and that Claimant did not follow his recommendations regarding attempting to keep a normal sleep schedule. (R. 18, 733). Next, the ALJ assigned Dr. Perkins' letter as a whole "some weight" regarding Claimant's sleep hygiene issues. (R. 20). The ALJ twice mentioning Dr. Perkins' opinion evinces that the ALJ considered it in making his RFC and credibility analyses.

Claimant nonetheless argues that the ALJ's failure to specifically mention the line from Dr. Perkins' opinion stating that the mere existence of Claimant's condition is grounds for a finding of disability was error. The fact that a claimant has received a diagnosis is generally insufficient to establish disability. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir.1986) (holding that the diagnosis of a condition, alone, is insufficient to prove disability, because there must also be "a showing of related functional loss"). Moreover, the ALJ is not required to recite his consideration of every piece of evidence from the record in order to show that it was considered. *See, e.g.*, *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999) (noting the ALJ need not discuss every piece of evidence in making credibility determination). Finally, an opinion on whether a condition renders a claimant disabled falls under the auspices of 20 C.F.R. § 404.1527(d)(1), which reserves opinions on a claimant's disability for the Commissioner. While these opinions may not

10

be summarily dismissed on that basis, the ALJ does not have to assign them any "heightened evidentiary value." *Morgan v. Barnhart*, 142 F. App'x 716, 722 (4th Cir. 2005). Rather, the ALJ must assess the opinions in light of the record to "determine the extent to which the [treating physician's legal conclusion] is supported by the record." *Id.* (alteration in original) (quoting SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996)). The ALJ's RFC assessment makes plain that Dr. Perkins' opinion that Claimant was completely disabled was not supported by the record. Accordingly, the ALJ sufficiently explained his reasons for discounting Dr. Perkins' opinion, and the ALJ's decision to give only some weight to Dr. Perkins' opinion was supported by substantial evidence.

    *ii.    The ALJ's Failure to Seek a Medical Source Statement from Dr. Perkins.*

Claimant also contends that the ALJ failed to properly develop the record by not seeking an MSS from Dr. Perkins. Pl.'s Mem. at 8-10. The ALJ has a duty to explore all relevant facts and inquire into issues necessary for adequate development of the record, and "cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (citing *Walker v. Harris*, 642 F.2d 712, 714 (4th Cir. 1981); *Marsh v. Harris*, 632 F.2d 269, 300 (4th Cir. 1980)). This duty generally includes requesting an MSS, which is "a medical [opinion] submitted by [an] acceptable medical [source], including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis." SSR 96-5p, 1996 WL 374183, at *4; *see* 20 C.F.R. § 404.1513(b)(6) (stating medical reports needed from acceptable medical sources "should include . . . [a] statement about what [the claimant] can still do despite [his/her] impairment(s)").

Here, the ALJ's failure to seek an MSS from Dr. Perkins was not reversible error. Claimant cites *Smith v. Barnhart*, 395 F. Supp. 2d 298, 303-04 (E.D.N.C. 2005) for the proposition that the ALJ should have sought an MSS. Pl.'s Mem. at 9. *Smith* is distinguishable in a number of ways. First and foremost, in *Smith*, the medical notes from the claimant's treating doctor contained no statement of an opinion about the claimant's medical conditions and abilities, despite the fact that the notes provided sufficient information for such an opinion to be formed. 395 F. Supp. 2d at 304. In that situation, according to *Smith*, where the record contained no opinion evidence, the ALJ was under a duty to develop the record and obtain such an opinion on the claimant's behalf. *Id.* at 304-05. However, as discussed above, the record in the instant case contained an opinion from Dr. Perkins on Claimant's status that the ALJ sufficiently considered. (R. 18, 20, 733).

Second, and related, Claimant failed to show how seeking an MSS from Dr. Perkins would have changed the outcome of the case. "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994). Rather, Claimant must provide a factual foundation upon which the court can perceive a gap in the evidentiary record that is prejudicial to Claimant. *See Marsh*, 632 F.2d at 300 ("Where the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded.") (citations omitted). "To establish prejudice, a claimant must demonstrate that he or she could and would have adduced evidence that might have altered the result." *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (internal quotation & citation omitted); *see also King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) (explaining prejudice results where the ALJ's decision "might reasonably have been different had that evidence been before him when his decision was rendered"). In *Smith*,

the court found that Claimant was prejudiced because without the medical opinion in the record as it should have been, the weight attributable to such an opinion by the Commissioner was impossible to determine. 395 F. Supp. 2d at 307 ("it is not the province of this court to substitute its judgement as to the probable outcome for the Commissioner's judgment following a full and fair hearing based on an adequate record."). Here, where Dr. Perkins expressed his opinion that Claimant was disabled, and the ALJ thoroughly explored other objective medical evidence to the contrary and explained the weight attributed to the opinion, Claimant has failed to show any likelihood that the ALJ would have come to a different conclusion had he sought an MSS.

Finally, unlike the present case, the claimant in *Smith* was not represented by an attorney at the time of her administrative hearing. *Id.* at 300; (R. 31). Claimant bears the burden of presenting medical evidence of his impairment to the ALJ. 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner . . . may require."); 20 C.F.R. § 404.1512(c) (explaining it is the claimant's burden to furnish the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations). Indeed, "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about his [or her] own medical condition, to do so." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Claimant was represented by counsel, and the ALJ was allowed to presume that he presented his best case. *See Aytch v. Astrue*, 686 F. Supp. 2d 590, 599 (E.D.N.C. 2010) ("[W]hen an applicant for social security benefits is represented by counsel the [ALJ] is entitled to assume that the applicant is making his strongest case for benefits.") (quoting *Johnson v. Chater*, 969 F. Supp. 493, 509 (N.D. Ill. 1997)). Therefore, the ALJ's failure to seek an MSS was not error.

**B.      The ALJ's Use of Boilerplate Language.**

Claimant next contends that the ALJ's use of "boilerplate" language in his opinion denying Claimant benefits constituted reversible error. Pl.'s Mem. at 10-18. The undersigned disagrees with Claimant and finds that the ALJ adequately explained the reasoning behind his decision.

In the social security context, nearly all ALJ opinions contain significant amounts of boilerplate language. *Stephenson v. Comm'r. Soc. Sec. Admin.*, Civ. No. SAG-12-1220, 2013 WL 1345085, at *3 n.2 (D. Md. Apr. 1, 2013). Inclusion of such language is not problematic unless it is used "to the exclusion of case-specific explanation of the ALJ's analysis and appropriate citation to the evidence of record." *Id.* Where the ALJ's opinion makes clear that the evidence of record was considered and the reasons underlying the decision, the use of boilerplate language does not constitute reversible error. *Racey v. Astrue*, No. 5:12CV00036, 2013 WL 589223, at *6 (W.D. Va. Feb. 13, 2013), *adopted by* 2013 WL 1405858 (W.D. Va. Apr. 8, 2013); *cf. Little v. Colvin*, No. 2:12CV300, 2013 WL 2489173, at *3-6 (E.D. Va. June 7, 2013) (remanding where the ALJ used boilerplate language and did not sufficiently explain the evidence and reasoning behind his decision).

Claimant challenges six different passages of boilerplate language by the ALJ. Each is considered below.

*i.      The ALJ's statements that Claimant's alleged daily activities cannot be objectively verified and that other factors, including weak medical evidence, warrant the finding that Claimant's limitations are not caused by his medical condition.*

Claimant first takes issue with the ALJ's statement that Claimant's "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty." Pl.'s Mem. at 10-11; (R. 19). Claimant also argues that the very next sentence in the ALJ's opinion constitutes reversible error: "it is difficult to attribute that degree of limitation to the claimant's medical

14

condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision." Pl.'s Mem. at 11-12; (R. 19). As these statements are related, the undersigned considers them together despite being separately raised in Claimant's brief.

In assigning error to the first statement, Claimant relies primarily on a series of decisions where boilerplate language and poor analysis led to remand. Pl.'s Mem. at 10-11. The difference between the cases Claimant cites and the instant case is that those cases found that boilerplate language was but one reason that remand was warranted, in addition to a host of other factors. *See Rowley v. Colvin*, No. 1:12-CV-01125-DML-LJM, 2013 WL 5487864, at \*4-5 (S.D. Ind. Sept. 27, 2013) (remanding where the reasons the ALJ gave for assigning the claimant little credibility, including the a reason outlined in boilerplate language, were not supported by substantial evidence); *Garcia v. Astrue*, No. 12CV992-WQH (BLM), 2013 WL 1797029, at \*9-18 (E.D. Cal. Mar. 13, 2013) (recommending remand where none of the five major reasons offered by the ALJ for declining to credit Claimant's subjective testimony was supported by substantial evidence), *adopted by* 2013 WL 1797032 (E.D. Cal. Apr. 26, 2013); *Gonzalez v. Astrue*, No. 1:10-CV-00899-DML-TWP, 2011 WL 4538081, at \*8-9 (S.D. Ind. Sept. 29, 2011) (remanding because the ALJ's use of boilerplate language indicated a lack of consideration of the claimant's daily activities, and because the ALJ failed to consider treating physician testimony tending to support the claimant's alleged limitations); *Johnson v. Astrue*, No. CV-09-3075-CI, 2010 WL 4386466, at \*4-6 (E.D. Wash. Oct. 27, 2010) (remanding where the ALJ failed to find "clear and convincing reasons" for rejecting the claimant's symptom testimony, and finding that the use of unsupported boilerplate language did not constitute a "clear and convincing" reason). In these cases, the common theme is that the credibility assessment as a whole fails to pass the muster of the substantial evidence test.

15

In this case, however, the ALJ's findings of other causes for Claimant's functional limitations are specifically noted and are supported by substantial evidence. *Cf. Swanson v. Barnhart*, 190 F. App'x 655, 657-58 (10th Cir. 2006) (remanding where the ALJ failed to specify "other reasons" and "other factors" tending to support his findings). The ALJ noted the weak connection between the medical evidence and Claimant's limitations. (R. 19). Specifically, the ALJ noted Dr. Perkins' statements that "most of [the claimant's] visits revolve around his desire for Social Security Benefits," that Claimant failed to follow Dr. Perkins' recommendation of keeping a regular sleep-wake schedule, and Claimant's failure to keep a return appointment for sleep treatment. (R. 18-19, 733, 785). Each of these considerations indicates that Claimant's allegations are not as severe as claimed and were, therefore, proper evidence to weigh in making a credibility assessment. The ALJ's discussion of these exhibits also shows that he properly engaged in "case-specific explanation" of his reasoning and did not merely rely on language copied and pasted from other decisions in place of analyzing the case before him. *Stephenson*, 2013 WL 1345085, at *3 n.2.

Claimant also argues that he is entitled to rely on subjective testimony of limitations where objective medical evidence establishes a medical condition that could cause those limitations, citing *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006). Pl.'s Mem. at 11. To the extent such testimony is inconsistent with remaining objective evidence in the record, however, the ALJ need not accept it. *Id.* at 565 n.3; *Parris v. Heckler*, 733 F.2d 324, 327 (4th Cir. 1984) ("subjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof"). Here, Claimant alleged that he was unable to work because he could not align his sleep-wake schedule to accommodate a standard working schedule. The treatment records and opinion from Dr. Perkins, however, shows that Claimant failed to keep a return appointment for further treatment, did not make

16

real attempts to maintain a regular wake-sleep schedule, and that his visits with his doctor were apparently geared toward collecting disability benefits. (R. 733, 785). Such evidence indicates that Claimant's subjective allegations were not as serious as he claims and were proper considerations for the ALJ when weighing subjective testimony against objective medical evidence. *Pittman v. Massanari*, 141 F. Supp. 2d 601, 610 (W.D.N.C. 2001) ("[T]he Plaintiff's failure to follow his doctor's recommendations or to even seek medical treatment is substantial evidence that his testimony was not credible.") (citing *Hunter*, 993 F.2d at 33).

Claimant finally argues that the ALJ's characterization of the medical evidence as "relatively weak" is logically inconsistent with the finding that Claimant suffered from conditions that could cause his alleged limitations. Pl.'s Mem. at 12. That argument is unpersuasive. Here, the ALJ made the finding that the medical evidence showed Claimant suffered from impairments that *could* cause the alleged limitations, but that the evidence did not support the degree of limitation alleged. (R. 19). Such a finding is consistent and the undersigned finds no error. Accordingly, Claimant's first and second assignments of error as to the ALJ's use of boilerplate language are without merit.

*ii.     The ALJ's decision not to credit the statements of Claimant's mother on the grounds that she is not medically trained and is related to Claimant.*

Claimant's third and fourth complaints about the ALJ's use of boilerplate language pertain to the ALJ's decision to not afford full weight to statements made by Aileen Schaller, Claimant's mother ("Ms. Schaller"). Pl.'s Mem. at 12-15. First, Claimant contends that the ALJ's consideration of his mother's lack of medical training constituted reversible error. *Id.* at 12-14. Second, Claimant argues that the ALJ's consideration of his mother's relationship with him was improper. *Id.* at 14-15. The undersigned finds that any error here was harmless and provides no basis for remand.

17

The ALJ considered the Third Party Function Report submitted by Claimant's mother and gave three reasons for not assigning it more weight: (1) Claimant's mother lacked medical training; (2) Claimant's mother is related to Claimant and, therefore, could have opinions colored by affection for Claimant; and (3) the opinion is inconsistent with the ALJ's findings regarding the range of activities Claimant is capable of performing. (R. 20). Claimant argues that the first two reasons indicate that the ALJ failed to adequately consider the statements made by Ms. Schaller as "competent evidence." Pl.'s Mem. at 13-14 (citing *Eyler v. Colvin*, No. 3:13-CV-05938-KLS, 2013 WL 5835779, at *6 (W.D. Wash. Oct. 29, 2013); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). "The mere fact that a family member is not a neutral party is an insufficient reason to reject her statements." *Massey v. Colvin*, No. 5:13-CV-459-D, 2014 WL 3845146, at *7 (E.D.N.C. June 17, 2014), *adopted by* 2014 WL 3845151 (E.D.N.C. Aug. 5, 2014). Furthermore, "[d]escriptions of friends and family members who were in a position to observe the claimant's symptoms and daily activities have been routinely accepted as competent evidence." *Morgan*, 142 F. App'x at 731 (quoting *Behymer v. Apfel*, 45 F. Supp. 2d 654, 663 (N.D. Ind. 1999)). However, the ALJ also provided a third appropriate reason for discounting the opinion and stated that he considered the report and limitations in fashioning the RFC, indicating that he considered the statements to be "competent evidence." (R. 20). *See Massey*, 2014 WL 3845146, at *7 ("Because the ALJ explained that the report was inconsistent with the evidence contained in the medical records but that he had considered the report in determining Plaintiff's RFC, the court rejects Plaintiff's argument that the ALJ failed to consider this evidence."); *Eyler*, 2013 WL 5835779, at *6; *Sprague*, 812 F.2d at 1232. Thus, despite noting two specious reasons for discounting the third party's account of Claimant's impairments, the ALJ's discussion indicates that the boilerplate language did not displace proper,

full consideration of the evidence. Claimant's third and fourth assignments of error are therefore without merit.

    *iii.*    *The ALJ's statement that "[Claimant] has not generally received the type of medical treatment that one would expect from a totally disabled individual."*

Claimant next contends that the ALJ's consideration of Claimant's course of treatment was an improper consideration in the credibility analysis and improper use of boilerplate language. Pl.'s Mem. at 15-16; (R. 19). Claimant cites *Dannels v. Astrue*, No. 10-1416-SAC, 2011 WL 6372866, at \*4 (D. Kan. Dec. 20, 2011) for the proposition that "in the absence of any medical evidence indicating the relevance or significance" of the treatments that Claimant did or did not receive, the ALJ may not render a medical judgment regarding the relevance or significance of those treatments. Here, however, there is such relevant medical evidence indicating the import of Claimant's treatment regimen and that evidence was considered by the ALJ. First, the ALJ noted that Dr. Perkins stated in his medical opinion that Claimant had failed to follow the prescribed course of treatment of attempting to maintain a regular sleep-wake schedule. (R. 18, 19, 733, 785). Next, the ALJ considered that Claimant had failed to keep a return appointment with Dr. Perkins and ceased all contact with him for four years because Claimant perceived that there was no need to continue treatment. (R. 18, 733). Third and finally, the ALJ considered that Dr. Perkins felt that Claimant's visits were largely related to acquiring social security benefits. (R. 19, 785). These three considerations demonstrate judgments, by a medical professional, about the nature of Claimant's treatment history and record. As such, the ALJ was permitted to comment on that history and was not impermissibly substituting his own opinion and judgment on the nature of Claimant's treatment for the more qualified opinion of a medical professional.

19

*iv.* *The ALJ's statement that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."*

Claimant's final allegation of improper use of boilerplate language concerns the ALJ's

finding that Claimant's statements are not credible to the extent they are inconsistent with the ALJ's

RFC finding. Pl.'s Mem. at 16-18. Claimant bases his argument on the Seventh Circuit's decision

in *Bjornson v. Astrue*:

> One problem with the boilerplate is that the assessment of the claimant's "residual functional capacity" (the bureaucratic term for ability to work) comes later in the administrative law judge's opinion, not "above"—above is just the foreshadowed conclusion of that later assessment. A deeper problem is that the assessment of a claimant's ability to work will often (and in the present case) depend heavily on the credibility of her statements concerning the "intensity, persistence and limiting effects" of her symptoms, but the passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The administrative law judge based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be. In this regard we note the tension between the "template" and SSR 96–7p(4), www.ssa.gov/OP_Home/rulings/di/01/SSR96–07–di–01.html (visited Jan. 4, 2012), which states that "an individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." The applicant's credibility thus cannot be ignored in determining her ability to work [RFC].

671 F.3d 640, 645-46 (7th Cir. 2012). This court has previously addressed *Bjornson*, concluding

"[w]hile Bjornson is not binding on this court, it also does not stand for the proposition that use of

this template language necessitates remand." *Mascio v. Colvin*, No. 2:11-CV-65-FL, 2013 WL

3321577, at *3 (E.D.N.C. July 1, 2013).

Here, in the pages following the use of the boilerplate statement, the ALJ demonstrates that

he considered the evidence of record and used relevant sections of the evidence to support his credibility finding. For example, the ALJ considered Claimant's admitted daily activities, the medical treatment regimen sought by Claimant, opinion evidence from medical professionals, including Dr. Perkins and the DDS physicians, and Ms. Schaller's Third Party Function Report, all relevant considerations when evaluating Claimant's credibility. (R. 19-20). Despite the use of the boilerplate language, the ALJ's analysis indicates that credibility was considered in addition to numerous other factors, such as the treatment regimen, opinions of physicians, transferability of job skills, and Claimant's testimony, when determining Claimant's RFC. (R. 17-20). Claimant's final allegation of use of improper boilerplate language, therefore, does not merit remand in this case.

C. The ALJ's Assessment of Claimant's RFC.

Claimant's third argument is that the ALJ erred in failing to find any significant non-exertional limitations outside of limiting Claimant to simple, routine, and repetitive tasks as a result of Claimant's sleep disorder. Pl.'s Mem. at 18-19. Claimant bases this argument upon the order of the Appeals Council, which remanded because the ALJ found no work-related functional limitations resulting from mental impairments despite finding that Claimant suffered from the severe mental impairments of alcohol abuse and a history of depression and moderate difficulties in social functioning and concentration, persistence, and pace. (R. 88, 90, 99). The Appeals Council decision remanded with specific instruction to reconsider Claimant's maximum RFC and to "incorporate any appropriate functional limitations stemming from [Claimant's] mental impairments." (R. 99).

In the second decision, the ALJ found again that Claimant's history of depression was a severe impairment, but found only that Claimant had a history of alcohol abuse. (R. 15). The ALJ also noted that Claimant suffered only mild difficulties in social functioning, yet continued to

21

experience moderate problems with concentration, persistence, and pace. (R. 17). The ALJ then noted an additional functional limitation in his RFC determination: that Claimant be limited to simple, routine, and repetitive tasks. *Id.*

While Claimant asserts that his sleep disorder merits some additional limitation, he fails to specifically identify any additional functional limitations that the ALJ should have included in his RFC analysis. *See Hunter v. Colvin*, No. 1:10CV401, 2013 WL 2122575, at *10 (M.D.N.C. May 15, 2013) (finding the ALJ's RFC is supported by substantial evidence where "Plaintiff has not even asserted what additional limitation the ALJ should have included in her RFC and after a review of the record, none seems readily apparent."), *adopted by* June 18, 2013 Order. Furthermore, as previously discussed, the ALJ determined that the record does not support the level of severity alleged by Claimant related to his sleep disorder and this determination is supported by substantial evidence. (R. 18). Likewise, the ALJ's decision to include a limitation to simple, routine, and repetitive tasks is appropriate given the finding that Claimant experienced moderate difficulties with concentration, persistence, and pace. The ALJ found only mild difficulties in the remaining mental evaluation areas of social functioning and activities of daily living with no extended episodes of decompensation. *Id.* The medical evidence in the case does not suggest that concluding otherwise was appropriate. Outside of the opinion of Dr. Bean, to which the ALJ properly assigned little weight, because it was largely reliant on Claimant's subjective complaints and did not accurately reflect Claimant's condition prior to the date last insured, none of the medical opinions considered by the ALJ suggests that Claimant suffers from any further functional limitations as a result of his mental impairments. *See* (R. 77-78, 398-400, 437-42, 733). As Claimant identifies no further functional limitations that should have been included and none of the evidence suggests additional

limitations existed, the ALJ properly concluded that limiting Claimant to simple, routine, and repetitive tasks was the only non-exertional functional limitation supported by the evidence.

**D.     The ALJ's Assessment of Claimant's Credibility.**

Claimant's final argument is that the ALJ failed to adequately assess his credibility. Pl.'s Mem. at 19-20. Specifically, Claimant argues that the ALJ should have assigned his symptom testimony greater weight than was given.

It is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."). Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *See Craig*, 76 F.3d at 593-94. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* SSR 96-7p, 1996 WL 374186, at \*2 (July 2, 1996). If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *See Craig*, 76 F.3d at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R.

23

§ 404.1529(c)(3); SSR 96-7p, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because her subjective complaints are not substantiated by objective medical evidence. *See Craig*, 76 F.3d at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p, 1996 WL 374186, at *3.

In assessing Claimant's allegations, the ALJ made the step one finding that Claimant's medically determinable impairments could cause her alleged symptoms. (R. 19). At step two, however, he found Claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms not to be fully credible to the extent that they conflicted with his RFC determination. *Id.* The ALJ gave two major reasons for electing not to credit Claimant's pain testimony: weak medical evidence and that the medical opinion evidence fails to support the degree of limitation alleged by Claimant. (R. 17-20).

As discussed above, *infra* at Section V.B., the ALJ's finding that medical evidence failed to support the degree of limitation testified to by Claimant is supported by substantial evidence. The ALJ noted and the evidence showed that Claimant's treating physician felt that clinic visits were primarily to accomplish the purpose of collecting Social Security benefits, Claimant failed to keep a follow-up appointment and did not visit the treating physician until four (4) years later, and that Claimant did not attempt to continue the course of treatment recommended by the treating physician. (R. 18-19, 733, 785). These considerations are appropriate measures of Claimant's credibility and constitute substantial evidence in support of the ALJ's conclusion that Claimant is not as functionally limited as alleged.

Further, the ALJ's finding that the medical opinion evidence failed to support the degree of

24

limitation alleged by Claimant is supported by substantial evidence. Claimant points to Dr. Perkins' statement that Claimant's diagnosis with circadian rhythm disorder "in and of itself, should be sufficient to support a claim of disability" as evidence to the contrary. Pl.'s Mem. at 19-20; (R. 733). The ALJ was required to consider the opinion but was under no obligation to assign it any "heightened evidentiary value" because it expressed an opinion on an issue reserved for the commissioner. *Morgan*, 142 F. App'x at 722; 20 C.F.R. § 404.1527(d)(1) (reserving opinions on the issue of disability for the ALJ). Instead, the ALJ is only required to evaluate the opinion in light of the record and to "determine the extent to which the [treating physician's legal conclusion] is supported by the record." *Id.* (citing SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996)). As discussed above, *infra* Section V.A., the ALJ performed the requisite review of the record and determined the weight of the evidence supports a finding that Claimant is not disabled. (R. 17-20).

The ALJ also properly assigned little weight to Dr. Bean's opinion because it was based primarily upon Claimant's subjective complaints. *Mastro*, 270 F.3d at 178. Dr. Bean serves as Claimant's primary care provider and did not attach any laboratory or diagnostic evidence to the opinion to support his findings. (R. 437-42). Claimant visited Dr. Bean for a variety of problems, including sleep issues, but the three visits immediately prior to the preparation of Dr. Bean's opinion were for the purpose of helping Claimant secure disability benefits. (R. 443-50). The notes from those visits do not include any laboratory testing results, which suggests that the opinion is based upon the subjective descriptions Claimant offered Dr. Bean of his symptoms. The ALJ, thus, was entitled to assign minimal weight to the opinion. Further, since the opinion is in the form of a questionnaire, the ALJ was entitled to assign it less weight than a fully explanatory and narrative opinion because such form opinions do not offer adequate explanation of their findings. *See*

*Nazelrod v. Astrue,* No. BPG-09-0636, 2010 WL 3038093, at *6 (D. Md. Aug. 2, 2010) (citing *Mason v. Shalala,* 994 F.2d 1058, 1065 (3d Cir.1993)) ("Form reports in which a physician's obligations [sic] is only to check a box or fill in a blank are weak evidence at best.") (alteration added); *Saunders v. Colvin,* No. 5:12-CV-775-D, 2014 WL 1057024, at *8 (E.D.N.C. Mar. 17, 2014) (citing *Nazelrod*).

The DDS physicians' opinion evidence relied upon by the ALJ provides support for his conclusion that Claimant was not as impaired as he claims. For example, DDS physicians, after reviewing the medical record, determined that Claimant was not disabled (R. 71, 81), that Claimant was capable of performing light work (R. 78-80), and that there was insufficient evidence to suggest that Claimant had serious functional limitations as a result of his mental impairments (R. 77). Since the ALJ properly found that the opinions of Claimant's treating physicians were not entitled to full weight, the ALJ properly relied upon the opinions offered by the DDS physicians. Where objective medical evidence or lack thereof conflicts with Claimant's subjective complaints of pain, the ALJ is permitted to weigh the medical evidence more heavily than Claimant's testimony. *See Hines,* 453 F.3d at 565 n.3; *Parris,* 733 F.2d at 327 (4th Cir. 1984). The ALJ's credibility assessment, therefore, is supported by substantial evidence.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-24] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-30] be GRANTED, and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections, response to which

(if any) must be made within seven (7) days upon receipt of the written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 18th day of August, 2014.

Robert B. Jones, Jr.
United States Magistrate Judge